UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID KAPUSTYNSKI,
    *Plaintiff*,

v.

NANCY A. BERRYHILL, *Commissioner of the Social Security Administration*,
    *Defendant*.

No. 3:16-cv-00250 (JAM)

**RULING DENYING MOTION TO REVERSE
THE DECISION OF THE COMMISSIONER**

    Plaintiff David Kapustynski asserts disability on the basis of, among other ailments, joint pain, back pain, cognitive deficits, and heart disease since May 18, 2013. He brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the defendant Commissioner of Social Security, who denied plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income. For the reasons set forth below, I will deny plaintiff's motion to reverse or remand the decision of the Commissioner (Doc. #14).

**BACKGROUND**

    Plaintiff was 56 years old when he applied for disability insurance benefits and supplemental security income. He worked for around 15 years as an auto mechanic in Florida, but eventually left for Connecticut to be cared for by his family after a severe gastrointestinal bleed, which has since resolved. Plaintiff's date last insured is December 31, 2017.

    Plaintiff applied for a period of disability and disability insurance benefits on June 7, 2013, and for supplemental security income on June 19, 2013, each with an onset date of May 18, 2013. His applications were denied initially on August 20, 2013, and upon reconsideration on October 10, 2013. Doc. #11-3 at 12. The ALJ held a hearing on February 13, 2015, at which plaintiff (represented by counsel) and a vocational expert testified.

1

On May 14, 2015, the ALJ ruled that plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's analysis followed the familiar five-step evaluation for considering a claim of disability. *See, e.g.*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity during the relevant time period.

At step two, the ALJ found that plaintiff suffered from the following "severe impairments" during the relevant time period: major depressive disorder, generalized anxiety disorder, and alcohol abuse in remission. Doc. #11-3 at 15. Plaintiff had a number of non-severe, medically determinable impairments, including diverticulitis, kidney stone, anemia, leukocytosis (high white blood cell count), hyperlipidemia, dyspnea (shortness of breath), althralgias (joint pain), osteoarthritis of the knees, carpal tunnel syndrome, labrynitis (ear disorder causing dizziness), hypertension, and vestipular disorder (ear disorder causing balance disruption). Doc. #11-3 at 15. Several claimed impairments were not medically determinable, including alleged chronic obstructive pulmonary disorder (COPD) and congestive heart failure, for lack of diagnoses in the record and plaintiff's failure to supplement the record within the time frame set forth by the ALJ. Doc. #11-3 at 16.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Doc. #11-3 at 17. The ALJ considered listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders), and specifically concluded with respect to 12.04 and 12.06 that the "paragraph B" and "paragraph C" criteria had not been met. Doc. #11-3 at 17–19.

At step four, the ALJ concluded that plaintiff could not perform his past relevant work as an auto mechanic, Doc. #11-3 at 24, which a vocational expert had testified was precluded because of how fumes in the workplace would affect plaintiff's COPD. The ALJ found plaintiff's residual functional capacity (RFC) to be the capacity to perform a full range of work at all exertional levels yet with certain non-exertional limitations: that plaintiff can frequently balance but never climb ladders, ropes, or scaffolds; that plaintiff can work in a setting free of concentrated exposure to hazardous conditions, such as unprotected heights and exposure to fumes such as odors, dust, gases, and poor ventilation; and that plaintiff can perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions in a setting with few workplace changes. Doc. #11-3 at 19.

In calculating plaintiff's RFC, the ALJ found that plaintiff's credibility should be "diminished" because plaintiff allegedly exaggerated some of his symptoms, engaged in arguably robust daily activities, and had sought unemployment benefits, creating a conflict about whether he was physically able to work. Doc. #11-3 at 23–24. The ALJ also found "not entirely credible" plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. Doc. #11-3 at 20.

As to plaintiff's physical impairments, the ALJ noted that none of plaintiff's treating physicians had recommended exertional restrictions and that plaintiff's pain had been ameliorated by medication. Even without the medication (which plaintiff testified he had to stop taking because he had recently been diagnosed with congestive heart failure), the ALJ pointed to plaintiff's testimony that he was able to "deal with" his pain. And although the ALJ imposed several physical limitations (such as restrictions on balancing, climbing, being at heights, and exposure to fumes), he did not discuss them in any detail in formulating the RFC, other than to

discuss plaintiff's credibility. The ALJ also adjusted the RFC to account for plaintiff's non-exertional impairment relating to plaintiff's "cognitive deficits": only simple tasks because of plaintiff's diminished memory.

At step five, the ALJ consulted the vocational grids, but then determined that plaintiff's non-exertional impairments required him to consult the testimony of the vocational expert. Doc. #11-3 at 25. The ALJ consulted the vocational expert to determine whether plaintiff's non-exertional impairments significantly eroded the occupational base of unskilled work at all exertional levels and, based on that testimony, concluded that it did not. Doc. #11-3 at 26. The vocational expert gave three jobs that plaintiff would be able to perform in the national economy: each of those jobs were unskilled and of light physical exertion: mail clerk, bench assembler, and electronics assembler. Doc. #11-3 at 26. Accordingly, the ALJ concluded that plaintiff was not disabled.

Plaintiff requested Appeals Council review of the ALJ's decision on May 29, 2015, and review was denied on December 23, 2015. Plaintiff then filed this federal action asking the Court to reverse the Commissioner's decision or remand the case for rehearing. Doc. #14. In response, the Commissioner has moved to affirm the Social Security Administration's final decision. Doc. #17.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as

4

adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### *Severity of Certain Impairments*

Plaintiff asserts that the ALJ should have found plaintiff's medically determinable musculoskeletal and cognitive impairments to be "severe impairments" in addition to plaintiff's other severe impairments. An impairment is non-severe if "it does not significantly limit your physical . . . ability to do basic work activities," such as walking, standing, or sitting. 20 C.F.R. § 416.922. Absent any argument that the impairments found to have been non-severe would have met or medically equaled the listings in 20 C.F.R. pt. 404, subpt. P, app. 1, I conclude that there was no error here that requires remand, because the ALJ identified severe impairments at step two, considered plaintiff's "impairments individually and in combination" in formulating the RFC, Doc. #11-3 at 24, and plaintiff's claim otherwise proceeded through the sequential evaluation process. *See Woodmancy v. Colvin*, 577 F. App'x. 72, 74 n.1 (2d Cir. 2014); *Stanton v. Astrue*, 370 F. App'x. 231, 233 n.1 (2d Cir. 2010).

### *The Treating Physician Rule and the Medical Evidence*

The treating physician rule requires that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128; 20 C.F.R. § 404.1527(d)(2). Even if the treating physician's opinion is not given controlling

weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129. After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30.

The ALJ assigned "little weight" to the assessment of examining psychologist Michelle Gargan, because she was not plaintiff's *treating* psychologist and because the "crippling degree of mental limitation described by Dr. Gargan [was] unsupported by the longitudinal record." Doc. #11-3 at 21. Plaintiff acknowledged at oral argument that Dr. Gargan was not a treating source, but nevertheless argues that Dr. Gargan's opinions should have been given "great weight" or the same weight as that given to the opinions of Dr. Cohen, another examining non-treating source who is a mental health specialist. He cites no support for this proposition that an ALJ must engage in comparative weighing of the medical testimony—and I have not found any—because the proper inquiry is, of course, whether the ALJ evaluated each particular medical opinion in light of the factors listed in 20 C.F.R. § 404.1527(c).

Plaintiff also argues that the ALJ should have given Dr. Gargan's opinions more weight because she is a specialist pursuant to 20 C.F.R. § 404.1527(c)(5). But the ALJ in fact noted that Dr. Gargan was a specialist, Doc. #11-3 at 21, and specialization is just one of many factors the ALJ must consider in deciding the weight to give to a medical opinion. Substantial evidence

6

supports the ALJ's decision to grant "little weight" to Dr. Gargan's opinion for the reasons set forth in the decision, in particular Dr. Gargan's own note that her assessment was merely a "cursory screening." Doc. #11-3 at 21.

Plaintiff then challenges the weight given to the opinions of Dr. Cohen, a mental health specialist and consultative examiner, who opined that plaintiff had some mental limitations, but that plaintiff complained mostly of physical ailments and that "[h]is medical status can be cleared with rest and perhaps treatment[.] [T]his gentleman may improve his mood as long as he remains completely sober and on a regimen of health care improvement." Doc. #11-8 at 122. The ALJ's decision to give "great weight" to Dr. Cohen's opinion is supported by substantial evidence, as the opinion is supported by the longitudinal evidence and plaintiff's only source of mental health treatment, Kathy Cheslok, a social worker.

As to Cheslok, plaintiff does not dispute that the ALJ properly applied the law in deciding to assign "great weight" to Cheslok's opinions about plaintiff's mental health. *See* Doc. #11-3 at 22; SSR 06-03p (discussing how to assign weight to non-medical treating sources such as social workers). Rather, plaintiff contends that, despite the ALJ's stating that he assigned the opinion "great weight," the ALJ did not actually assign the opinion great weight because the RFC allegedly does not address limitations flowing from plaintiff's memory difficulties and lack of productivity, about which Cheslock opined. Cheslok's evaluation states that plaintiff has "memory problems where he has to write everything down," and "some trouble" with productivity, but that he "presents as intelligent [and] capable" and "would tolerate work quite well if the job could accommodate his physical limitations" and if he were given "initial directions." Doc. #11-8 at 286. I agree with the Commissioner that the RFC does address plaintiff's memory limitations because it limits plaintiff to "simple, routine tasks involving no

more than simple, short instructions and simple work-related decisions in a setting with few workplace changes." Doc. #11-3 at 19. I see no error in application of the treating physician rule to the opinion of plaintiff's social worker.

Finally plaintiff nominally challenges the "great weight" given to the opinions of the non-examining state agency medical and psychological consultants, Dr. Gregory Hanson and Dr. Jerrold Goodman, but provides no specific facts or law in support of this claim, or what aspects of their opinions are unsupported by longitudinal evidence. Doc. #14-1 at 14 ("Here, the ALJ assigned great weight to two non-examining doctors, while diminishing the weight of examining doctors.").

### *Plaintiff's Credibility*

Plaintiff next challenges the ALJ's credibility assessment of his testimony. "It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984). This Court reviews the ALJ's findings regarding credibility for clear error. *Ibid.* If, however, an ALJ has not correctly assessed the medical evidence, then a mistaken assessment of the medical evidence should not form the basis for a finding that plaintiff is not credible. *Rosa v. Callahan*, 168 F.3d 72, 82 n.7 (2d Cir. 1999) ("Because we have concluded that the ALJ was incorrect in her assessment of the medical evidence, we cannot accept her conclusion regarding Rosa's credibility."). Plaintiff argues that the ALJ should not have looked unfavorably on plaintiff for using a cane where one had not been prescribed. But I do not see that this observation was in any way improper or illegitimate for the ALJ to consider.

Plaintiff next asserts that the ALJ did not properly evaluate plaintiff's pain because he failed to make specific findings about the location, intensity, frequency, or duration of his pain, *see* 20 C.F.R. 404.1529, and he further failed to break out this analysis, individually, as to each source of pain. I disagree, for the reasons set forth at length by the Commissioner in its briefing. *See* Doc. #17 at 28-32.

*RFC Limitations*

Lastly, plaintiff argues that the ALJ failed to account for certain limitations of plaintiff in formulating an RFC assessment. When identifying a claimant's RFC, the ALJ must engage in a two-step process. First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; if so, then the ALJ must consider the extent to which any alleged functional limitations that are due to such symptoms are reasonably consistent with objective medical evidence and other evidence. *See Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015). Part of this evaluation of a claimant's RFC includes making "a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Robinson v. Colvin*, 2015 WL 4759068, at *3 (D. Conn. 2015) (quoting SSR 96-7p).

I agree with the reasons set forth by the Commissioner to show that the ALJ's RFC determination was supported by substantial evidence. *See* Doc. #17 at 32-33. The RFC determination was not required to account for conditions about which plaintiff had complained that the ALJ did not find credible, and the RFC largely took account of plaintiff's respiratory and pulmonary concerns by means of its limitation to a workplace free of exposure to fumes such as odors, dust, gases, and poor ventilation. Doc. #11-3 at 19.

9

## CONCLUSION

For the reasons set forth above, plaintiff's motion to reverse or remand (Doc. #14) is DENIED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven, Connecticut, this 29th day of August 2017.

 /s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge